SOMMERVILLE, J.
A Mexican, 25 years of age, employed as a laborer on a steel gang of the defendant lumber company had his leg broken between the knee and the hip, while in the course of his employment.
Plaintiff alleges this is not a suit for compensation under the Employers’ Liability Act (Act No. 20 of 1914, as amended by Act No. 243 of 1916), but it is an action sounding in damages against the defendant employer because of the negligence and malpractice of the physician employed by the defendant company, who treated his broken leg in an unprofessional and improper way, and which resulted in the shortening of his right leg to the extent of 2% inches, rendering him incapable of earning a living thereafter.
Defendant answered, admitting the accident, but denying generally all the allegations made by plaintiff, and subsequently filed an exception of no cause of action, based on the assumption that the damage complained of was the result of an injury suffered by plaintiff while in the discharge of his duties under the defendant, and that the Employers’ Liability Act made the remedy therein provided an exclusive one, and that it excluded a suit sounding in damages. The exception was overruled. No bill of exceptions was reserved to the ruling. The case proceeded to trial on the merits, and there was judgment in favor of the defendant, dismissing plaintiff’s suit, at his costs. Plaintiff has appealed, and defendant has not answered the appeal.
Plaintiff alleges that, together with the other employés of the defendant company, he paid' hospital and doctor’s fees monthly, and that .defendant was obligated to furnish him a competent and skilled physician when he needed and wanted one; that the physician was paid a stated salary, which was far less than the amount received by the defendant lumber company from its employés for hospital and doctor fees, and that the company realized a profit on the transaction; that defendant selected its own physician, without reference to its employés, and that the injury now complained of formed no part of the injuries contemplated by the Employers’ Liability Act; that the physician referred to took charge of petitioner and accepted the work of setting the broken bone, but that he. permitted the ends of the fractured bone to lap, thereby weakening and shortening petitioner’s leg to the extent of 2Ya inches, and that all was due to the gross carelessness, negligence, and malpractice of the said lumber company’s physician; that the physician did not properly set plaintiff’s leg, and that he did not place on his leg the proper dressing, and .that he utterly failed to use either care, diligence, skill, or knowledge in handling your petitioner’s case; that the defendant lumber company is responsible and liable for the carelessness, negligence, and malpractice of its physician, and is responsible for the injury sustained by petitioner through the alleged malpractice. Plaintiff asked for damages in the sum of $10,000 against the defendant company.
Plaintiff, as a witness, testified in his own behalf to sustain the allegations made in his petition. He described the treatment by the physician referred to as having first stuck a needle into his thigh; that he then tied a straight board to the outside of his leg, tying it with some string and bandages; there were no weights used; and that the treatment was unsatisfactory, and inefficient, unskillful, and harmful. The testimony of plaintiff is supported by that of the nurse and four other witnesses, all of whom testified in Spanish with the aid of an interpreter. They all said that there was but one *539 board used, and that was tied on the outside oí the leg. Plaintiff then called five physicians to the witness stand, who had heard the testimony of plaintiff and the other witnesses, and it was their opinion, as’ experts, according to the testimony which they had heard, that the treatment- accorded plaintiff by Dr. Miller was unusual ánd inefficient. The several physicians testified further that a complete anaesthetic, such as chloroform or ether, should have been used, so as to have rendered the patient entirely unconscious while the fractured bone was being brought together and set, thus causing proper relaxation of the muscles and a lessening of the severe pain attending the injury and the setting of the ends of the bone in apposition properly. They were of the opinion that the hypo injection of one-half grain of morphine and one-hundredth grain of hyocine administered by Dr. Miller was insufficient for all the purposes.
If the testimony of plaintiff and his five witnesses could be accepted as the truth, the opinion of the physicians just referred to would be accepted by the court as final. But Dr. Miller, the physician in the employ of the defending company, who attended plaintiff, took the stand and denied positively what the witnesses had sworn to in connection with his treatment of the case.
Dr. Miller testified he had used the Linton splint, consisting of three boards, a model of which is with the record in this case, and that the Linton splint had been in general use for a long time for such fractures. I-Iis testimony is corroborated by the carpenter in the employ of the defendant company, upon whom he (the doctor) called at the time of the dccident to make for him the said Linton splint. This witness testified that the physician drew the plan of the apparatus; that he (the carpenter) executed the work in exactly the way indicated by Dr. Miller in his presence, and that it was finished within a half hour; and that he assisted the doctor in adjusting the splint to plaintiff’s leg. The evidence of the physician and of this last witness is direct, conclusive and convincing. Plaintiff’s witnesses were unskilled Mexican laborers, who perhaps did not pay sufficient attention to the apparatus on plaintiff’s leg to know whether it consisted of one or of three boards, and they were testifying with the aid of an interpreter about a scientific subject and the manner in which it was being operated.
Three physicians were called by defendant to the witness stand, and they testified, in support of Dr. Miller, that a complete anesthetic was not always necessary in treating a broken femur, that it largely depended upon the condition of the patient, and that the physician in attendance was the best judge of whether relaxation of the muscles had taken place or not. They were of the opinion that the administration of morphine and hyocine, as explained by Dr. Miller, was sufficient in some cases. They also testified that the use of the Linton splint was general throughout the hospitals in connection with a broken femur, and that it was used without weights. Dr. Fisher testified of the Linton splint:
“I think it is the splint for fractured femurs.” “I mean that it is the best that can be used in that particular fracture.”
And Dr. Fisher quoted from Martin’s medical work to the effect:
“That the fractured femur is always, as a rule, one-half inch shorter in a young child, and with an adult it is different.” “He gives from one to one and a half inch shortening, and owing to the fact that the shortening very often occurs after the removal of the permanent dressing. He also says that in one hundred cases he finds that out of every five there is from one to one and one-half inch shortening.”
Plaintiff’s leg was measured, and, instead of being two and one-half inches shorter than the left leg, it was found to be practi *541 cally one inch shorter, and. it would further appear from the evidence that with the most skillful treatment the shortening of an inch, or an inch and a half, might result. Dr. Martin in his works claims that—
“Not more than one man in five who has sustained a simple fracture of the thigh will ever again be able-bodied.”
We cannot, therefore, hold that the shortening of plaintiff’s broken leg was due to the fault, neglect, or lack of skill of the physician in the employ of the defendant company.
Plaintiff has failed to prosecute his appeal by making an oral or a printed argument in this court. The trial judge was of the opinion that plaintiff had failed to make out his case.
The judgment appealed from is affirmed.
O’NIELL, J., concurs in the decree.